IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. CAVANAUGH, )<br>)<br>    Plaintiff )<br>)<br>    v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social )<br>Security, )<br>)<br>    Defendant ) | Civil Action No. 04-0337 |

MEMORANDUM ORDER

CONTI, District Judge

### *Introduction*

This is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Robert J. Cavanaugh ("plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, et seq., and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381, et seq. Plaintiff contends that the decision of the Administrative Law Judge ("ALJ") that he is not disabled, and therefore not entitled to benefits, should be reversed or, in the alternative, remanded to the ALJ because it is not supported by substantial evidence. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny the parties' cross-motions for summary judgment and remand the case to the

Commissioner for further proceedings consistent with this opinion for the reasons set forth herein.

### *Legal Standard*

When reviewing an administrative law judge's determination subsequently adopted by the Commissioner, this court is bound to affirm the Commissioner's findings, if supported by substantial evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. § 405 (g). Substantial evidence may be defined as somewhat less than a preponderance of evidence, but more than a scintilla of evidence. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

### *Procedural History*

Plaintiff filed applications for DIB and SSI payments on April 24, 2002, alleging disability since September 23, 2000 due to back and shoulder impairments, and sleep apnea. (Tr. at 91-93, 390-396). The claim was denied on October 23, 2002 and a request for a hearing was filed on or about November 29, 2002. A hearing was held on July 2, 2003 before the ALJ. (Tr. at 23-26). On July 14, 2003, the ALJ issued a decision denying plaintiff's claim for DIB and SSI payments. (Tr. at 11-22). On July 28, 2003 plaintiff filed an appeal to request a review by the Appeals Council. (Tr. at 10). The Appeals Council denied review of plaintiff's case, making it the final decision of the Commissioner. (Tr. at 6-8). Plaintiff subsequently commenced the present action seeking judicial review.

*Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy" 42 U.S.C. § 1382c (a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. § 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d. Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the ALJ may find that the plaintiff is not disabled. Burns v. Burnhart, 312 F.3d at 119. The

Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process.  Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability in September 2000; (2) plaintiff suffers from degenerative disc disease of the lumbar spine, left shoulder pain with tendonitis, obesity, sleep apnea and a history of carpal tunnel syndrome, which are severe; (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff retained the residual functional capacity to perform a significant range of sedentary work, subject to certain exertional and nonexertional limitations, but cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff could perform.  (Tr. at 21-22).

Plaintiff raises two broad arguments in opposition.  First, plaintiff argues that the ALJ erred by failing to give proper consideration to his alleged mental impairment.  Second, plaintiff argues that the ALJ erred in finding that he could perform a range of sedentary work.  In that regard, plaintiff argues that he cannot perform the jobs identified by the vocational expert.  Defendant contends that the ALJ's decision is supported by substantial evidence.

Plaintiff first alleges that the ALJ erred by failing to give proper consideration to his alleged mental impairment.  Specifically, plaintiff contends that the ALJ did not accommodate plaintiff's limitations as defined by Dr. Jain, who diagnosed plaintiff with a mood disorder and depression in March 2003 resulting from his back impairment.  (Tr. at 18, 316).

The SSA provides that the claimant bears the burden of showing that he has a medically determinable impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).  In the case at bar, the ALJ noted that the plaintiff did not originally allege a mental impairment when he applied for disability and that the record is devoid of a history of mental health treatment.  The ALJ also noted that the plaintiff failed to establish that his impairment met the twelve-month durational requirement as required by the SSA.  (Tr. at 18-19).

Prior to the plaintiff's initial treatment in March 2003 at the Mon-Yough Community Center, the record indicates no prior history of mental health treatment. Plaintiff has not required any inpatient hospitalizations or emergency room visits for acute exacerbations of any mental condition.  (Tr. at 18, 315).  Moreover, in February 2002, Dr. Lodico reported that plaintiff denied suicidal ideation and rarely felt helpless, sad or hopeless. (Tr. at 18-19).  Since the first report in the record of depression was in March 2003 and the hearing before the ALJ was approximately four months later, the ALJ properly concluded that the plaintiff failed to establish an alleged mental impairment that lasted for twelve months.

With respect to whether plaintiff's alleged mental impairment was expected to last for a period of twelve months, there is no evidence of record relating to the effect of medication and counseling on plaintiff's ability to improve.  Plaintiff, however, contends that his global assessment functioning (GAF) range, as assessed by Dr. Jain, is indicative of a severe mood disorder and depression which would endure for a period of twelve

months.  As explained in the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th ed. 1994):

> The reporting of overall functioning … is done using the Global Assessment of Functioning (GAF) Scale.  The GAF Scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure.  The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning.… In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care.

<u>Id.</u> at 30.

Plaintiff's GAF range was reported to be 40-45.  The <u>Diagnostic and Statistical Manual of Mental Disorders</u> defines an individual with this level of functioning – a GAF of 50 or below – as being unable to work and complete tasks.  <u>Id.</u> at 32.  Further, a GAF in the 40-45 range indicates serious symptoms, such as suicidal ideation, severe obsessional rituals, frequent shoplifting, or a serious impairment in social, occupational, or school functioning.  <u>Id.</u> at 34.

Plaintiff asserts that the ALJ never considered his GAF range in her decision.  This court agrees with plaintiff because the ALJ failed to explain why the GAF range assessed by Dr. Jain has no probative weight.  The case will be remanded for a determination of whether plaintiff's GAF range is indicative of a disability as defined under Title II and Title XVI.  In making a disability determination, an administrative law judge has a duty to consider the opinions of treating physicians and to give them substantial weight.  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981) (citing <u>Bastien v. Califano</u>, 572 F.2d 908, 912 (2d Cir. 1978)).  An administrative law judge is not free to reject the conclusions of a treating physician in favor of his own contrary conclusions.

See Wallace v. Secretary of Health and Human Services, 772 F.2d 1150, 1154-55 (3d Cir. 1983). Even if a treating physician bases his medical judgment upon the plaintiff's subjective complaints, the ALJ can only reject the treating physician's medical opinion if there is contradictory medical evidence. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) ("[T]he medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence."). Essentially, an administrative law judge is required to review all the evidence presented and explain why he rejects probative conflicting evidence. In Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983), the court noted:

> While the ALJ is, of course, not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.

In the instant case, Dr. Jain assessed plaintiff as having a GAF in the 40-45 range at plaintiff's initial evaluation, before plaintiff received anti-depressant medication and underwent psychotherapy. (Tr. at 316). As noted, a GAF in the 40-45 range indicates serious manifestations of distress, such as suicidal ideation, severe obsessional rituals and frequent shoplifting, or a severe impairment in social, occupational or school functioning. Dr. Jain noted that plaintiff denied any active suicidal or homicidal ideations and that his thought process was goal directed and logical. (Tr. at 316). Nonetheless, he concluded that plaintiff had a GAF range of 40-50 and stated, "I am very worried about the patient." (Tr. at 317). Plaintiff admitted at the hearing before the ALJ that he had not given up hope and that he was undergoing treatment for his depression. (Tr. at 38, 47).

The ALJ opined, without addressing plaintiff's GAF range: "I am of the opinion that while at the present time the claimant has significant symptoms of depression, he has

only recently begun treatment, and certainly within 12 months of such treatment, there exists a good possibility of continuous improvement in his depression." (Tr. at 19). Under applicable precedent, an administrative law judge should not render a medical opinion. See Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983) (an administrative law judge's medical judgment cannot stand because "these kinds of judgment are not within the ambit of the ALJ's expertise"); Fowler v. Califano, 596 F.2d 600, 602 (3d Cir. 1979) ("[A]n ALJ is not free to set his own expertise against that of physicians who present competent medical evidence."); Schaaf v. Matthews, 574 F.2d 157 (3d Cir. 1978) (improper for an administrative law judge to engage in "medical diagnosis of his own").

If there is contradictory medical evidence in the record, the ALJ may reject probative evidence, but must explain the basis for her decision. If the ALJ believed that Dr. Jain's reports were unclear, the ALJ should consider securing additional evidence. See Kent v. Schweiker, 710 F.2d 110, 114-15 (3d Cir. 1983). A consultive exam may be advisable to clarify any discrepancy. See 20 C.F.R. §§ 404.1517; 404.1519(a), (b); 416.916(a), (b); 416.917.

This case will be remanded in order for the ALJ to address the plaintiff's GAF range and to determine the weight to be afforded to Dr. Jain's determination. In light of the remand, the court need not address plaintiff's second argument.

### *ALJ's Considerations on Remand*

In addition to a reevaluation of plaintiff's GAF range and an optional consultive exam, this court notes an additional consideration which may be explored by the ALJ on

8

remand. The ALJ may want to consider plaintiff's use of Vicodin.[1] The court notes that plaintiff takes Vicodin periodically and that he was taking Vicodin on the date of his hearing before the ALJ. (Tr. at 39, 187, 201, 219, 282, 362). The ALJ should clarify plaintiff's length of use of the drug, whether it is continuous or sporadic, whether it affects his ability to testify and whether the periodic use of Vicodin may affect his ability to perform jobs in the national economy.

### *Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court finds that a remand is necessary for the ALJ to explain why the GAF range was not probative. The parties' cross-motions for summary judgment are DENIED.

IT IS ORDERED AND ADJUDGED that this case shall be remanded back to the Commissioner for further proceedings consistent with this opinion.

The clerk shall mark this case closed.

By the Court:

Dated: July 21, 2005            /s/ Joy Flowers Conti
                                Joy Flowers Conti
                                United States District Judge

---

[1] Vicodin, the brand name for hydrocodone bitartrate and acetaminophen tablets, "is a semisynthetic narcotic analgesic and antitussive with multiple actions qualitatively similar to those of codeine." Physicians' Desk Reference 526 (59th ed. 2005). It is "indicated for the relief of moderate to moderately severe pain." Id. Side effects include drowsiness, lethargy, and impairment of mental and physical performance. Id. at 526-27.

cc: Zenford A. Mitchell
P.O. Box 99937
Pittsburgh, PA 15233

Paul E. Skirtich
Assistant U.S. Attorney
633 U.S. Post Office and Courthouse
Pittsburgh, PA 15219